UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

|  |  |
|---|---|
| RONALD E. ROUSSEAU,<br><br>Petitioner,<br><br>vs.<br><br>JUDGE KIMBERLY CRAVEN, IN HER OFFICIAL CAPACITY AS CRST ATTORNEY GENERAL; AND BRENDA CLAYMORE, IN HER OFFICIAL CAPACITY AS CRST CHIEF JUDGE;<br><br>Respondents. | 3:25-CV-03028-RAL<br><br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND DISMISSING PETITION WITHOUT PREJUDICE |

Ronald Rousseau filed a pro se petition for a writ of habeas corpus under 25 U.S.C. § 1303 and 28 U.S.C. § 2241 challenging his November 2025 arrest and detention by the Cheyenne River Sioux Tribe (CRST). Docs. 1, 1-1. Rousseau named 22 Respondents and sought declaratory and injunctive relief. Docs. 1, 1-1. Magistrate Judge Mark A. Moreno issued a report and recommendation that Rousseau's non-habeas claims be dismissed without prejudice to refiling them in a separate civil action and that all but two of the Respondents be dismissed. Doc. 4. Judge Moreno also issued a preliminary order on Rousseau's habeas claims, finding it unclear whether he had shown detention and exhaustion of tribal remedies, prerequisites to relief under 25 U.S.C. § 1303. Doc. 5. Judge Moreno gave the two remaining Respondents 30 days to reply to Rousseau's habeas petition and brief the detention and exhaustion issues. Id. Rousseau objected to Judge Moreno's orders, Doc. 7, and moved to amend his habeas petition, Doc. 8. This Court

1

then adopted the report and recommendation; dismissed Rousseau's non-habeas claims without prejudice; dismissed all Respondents but Kimberly Craven and Brenda Claymore; and granted Rousseau's motion to amend to the limited extent to allow consideration of the amended petition and attached exhibits when deciding whether Rousseau is entitled to habeas relief. Doc. 9. The motion to amend was otherwise denied. Id. The Respondents have now moved to dismiss, or in the alternative, to stay the case until the exhaustion of tribal remedies. Docs. 13, 14.

After de novo review of Judge Moreno's report and recommendation on the Respondents' motion and Rousseau's objections, this Court adopts in part the report and recommendation, grants the Respondents' motion, overrules Rousseau's objections, and dismisses the petition without prejudice to refiling following the exhaustion of tribal court remedies.

## I.      Factual and Procedural Background

As this Court reviewed in the previous Opinion and Order, Doc. 9, Rousseau alleges that CRST law enforcement arrested him on November 6, 2025, while he was repairing "assets" belonging to his father's business, Ted's Inc. Doc. 1 at 7; Doc. 1-1 at 2–3, 9. See also Docs. 14-3, 14-4, 14-7 at 18–24 (incident reports). Rousseau was charged with public nuisance, criminal conspiracy, trespass, disorderly conduct, and theft. Doc. 1-1 at 10; Doc. 1-2 at 23. Tribal officials detained Rousseau for 22 hours at the Walter Miner Law Enforcement Center in Eagle Butte, South Dakota, before releasing him on November 7. Doc. 1-1 at 10; Doc. 1-2 at 23. See also Doc. 14 at 7; Doc. 14-5 (cash bond in underlying tribal criminal case). The bond stated that if Rousseau failed to appear at any court proceedings in the CRST tribal court, he would forfeit the $500 bond. Doc. 14-5. Rousseau claims this detention constituted cruel and unusual punishment, alleging that the

jail was unsanitary, unsafe, and that inmates were denied medical care and prayer services. Doc. 1 at 8; Doc. 1-1 at 10–11.

Rousseau filed this case within a week of being released from tribal jail. Doc. 1. Most of his claims involve a dispute with his sister Frankie Rousseau over who should control Ted's, Inc. Rousseau asserts that his father Michael Rousseau wanted him and his brothers to have control of the company. Doc. 1 at 7; Doc. 1-1 at 3, 7–9. He filed an "Affidavit of Intent and Authorization for Asset Transfer" allegedly signed by Michael that purports to authorize Rousseau to take possession of some equipment belonging to Ted's, Inc. Doc. 1-2 at 14. Rousseau also filed a 2022 Annual Report listing himself as the president of Ted's, Inc. Id. at 4. Under a tribal court order, Frankie holds power of attorney (POA) over Michael's property and affairs, however, and appears to have actual control of Ted's, Inc.[1] Doc. 1-1 at 3, 7–9; Doc. 1-2 at 6. Rousseau maintains that his arrest and charges on November 6, 2025, resulted from tribal police relying on Frankie's "disputed" POA and ignoring the affidavit signed by Michael. Doc. 1 at 7–8; Doc. 1-1 at 3, 7–9. In his supplement, Rousseau added additional information concerning the other habeas petition pending before this Court on a separate tribal criminal conviction, see Doc. 10 at 2–3, as well as his contention that his experiences in appealing the results of separate tribal civil and restraining order proceedings combined with the current tribal prosecutor's filings "demonstrate that exhaustion is futile," id. at 10–15.

---

[1]Rousseau's motion to amend attached an order by a tribal court judge appointing Frankie as Michael's guardian. Doc. 8-2 at 6–9. The order was dated July 21, 2025, nunc pro tunc to April 24, 2024. Id. at 9. The order states that Frankie currently has POA over Michael's property and affairs, that the tribal court recognizes Michael as the sole owner of Ted's, Inc. until paperwork is submitted showing otherwise, and that Ted's, Inc. is included in Michael's estate until transfer of ownership before April 24, 2024, is proven. Id. at 6, 8–9. Rousseau claims the order is invalid. Doc. 8 at 2.

3

On January 20, 2026, the CRST prosecutor filed a criminal complaint in tribal court charging Rousseau with attempted theft of property, criminal conspiracy, and simple trespass, in violation of provisions of the CRST Law and Order Code. Doc. 14-7. Rousseau filed a motion to dismiss the charges against him, Doc. 14-8, and the CRST prosecutor responded in opposition, Doc. 14-9. Rousseau also filed a number of additional filings that he has made in his underlying tribal criminal case. See Docs. 17-1, 17-2, 17-3, 17-4, 17-5, 17-6, 17-7. According to the Respondents, a hearing on the motion to dismiss was scheduled for March 17, 2026. Doc. 14 at 7. Though this Court's record is unclear what occurred on March 17, later filings postdating March 17 reveal that Rousseau remains released on a personal recognizance bond with a pretrial hearing set for August 10, 2026. Doc. 20-1 at 5.

Following this Court's Opinion and Order on the previous report and recommendation and the motion to amend, Doc. 9, the two remaining Respondents in this case briefed the exhaustion and detention issues as directed by this Court and moved to dismiss the petition, or in the alternative, to stay the action pending the exhaustion of tribal remedies. Docs. 13, 14. Rousseau opposed the motion as "non-responsive" to this Court's order. See Doc. 17 at 2 ("Petitioner does not consent to dismissal, does not consent to a stay, and does not concede that the Tribe's judicial system is functioning in any meaningful sense."). Alternatively, "if this Court is inclined to grant the Tribe's motion in any form, Petitioner requests that the Court dismiss the petition outright rather than impose another stay" to allow Rousseau to seek immediate appellate review. Id. at 3.

Magistrate Judge Moreno issued a report and recommendation that the Respondents' motion be granted to the extent it seeks to stay the case until Rousseau exhausts his tribal remedies but be otherwise denied. Doc. 18. Rousseau filed one timely objection, Doc. 19, and three additional objections, Docs. 20, 21, 22, outside of the fourteen-day window provided for objections

in Judge Moreno's report and recommendation. See Doc. 18 at 11 ("The parties have 14 calendar days after service of this report and recommendation to object." (citing 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2))).

This Court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's report and recommendation, a district court judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. Because Rousseau has not yet exhausted his tribal remedies and requests that this Court dismiss his petition without prejudice rather than stay the action, this Court adopts the report and recommendation in part. This Court will grant the Respondents' motion, and, on Rousseau's request, dismiss the case without prejudice to refiling after Rousseau's exhaustion of tribal court remedies. See Doc. 17 at 3.

## II.    Discussion

Rousseau seeks habeas corpus relief under 25 U.S.C. § 1303. Doc. 1; see also Docs. 8-1, 8-2. Respondents move to dismiss, or in the alternative, to stay the petition pending exhaustion of tribal remedies. Doc. 13. Under the Indian Civil Rights Act, 25 U.S.C. § 1303, the "privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." Before hearing a habeas petition under the Indian Civil Rights Act, a court must first determine (1) whether the petitioner has exhausted their trial remedies and (2) whether the petitioner is in "detention" under § 1303. 1 Cohen's Handbook of Federal Indian Law § 11.08 (2026); see also Nygaard v. Taylor, 563 F. Supp. 3d 992, 1011–18 (D.S.D. 2021); Chegup v. Ute Indian Tribe of Uintah and Ouray Rsrv., 28 F.4th 1051,

1061–62 (10th Cir. 2022) (holding district court erred in ruling on whether ICRA claim involved detention before dismissing for failure to exhaust); Alvarez v. Lopez, 835 F.3d 1024, 1027 (9th Cir. 2016) ("We may not exercise jurisdiction over a habeas petition presenting ICRA claims unless the petitioner has first exhausted his tribal remedies."). This Court reviews de novo Rousseau's objections to dispositive matters in Judge Moreno's report and recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

### A. Exhaustion of Tribal Court Remedies

The tribal exhaustion doctrine recognizes that tribal courts are an important part of tribal sovereignty and self-determination. Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 14–18 (1987); Nat'l Farmers Union Ins. v. Crow Tribe of Indians, 471 U.S. 845, 856 (1985); Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 33 (1st Cir. 2000) (explaining that the concern for tribal sovereignty "forms the epicenter of the tribal exhaustion doctrine"); Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1507 (10th Cir. 1997) ("The tribal exhaustion requirement created by National Farmers is based on comity concerns for Indian tribes in maintaining their remaining sovereignty."). This doctrine requires litigants, in certain circumstances, to exhaust their remedies in tribal court before coming to federal court. Iowa Mut. Ins., 480 U.S. at 16–18; DISH Network Serv. LLC v. Laducer, 725 F.3d 877, 882–83 (8th Cir. 2013). The doctrine thus allows tribal courts to assert authority over reservation affairs without having to "compete" against federal courts for the right to do so. Iowa Mut. Ins., 480 U.S. at 16; Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Rsrv., 27 F.3d 1294, 1299 (8th Cir. 1994).

Under these principles, § 1303 petitioners typically must exhaust their remedies in tribal court before coming to federal court. Chegup, 28 F.4th at 1061; Janis v. Wilson, 521 F.2d 724, 726–27 (8th Cir. 1975). Exhaustion "assist[s] in the orderly administration of justice, provid[es]

6

federal courts with the benefit of tribal expertise, and clarif[ies] the factual and legal issues that are under dispute and relevant for any jurisdictional evaluation." Colombe v. Rosebud Sioux Tribe, 747 F.3d 1020, 1024 (8th Cir. 2014). "[E]xhaustion of tribal court remedies 'means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts.'" WPX Energy Williston, LLC v. Jones, 72 F.4th 834, 837 (8th Cir. 2023) (quoting Iowa Mut. Ins., 480 U.S. at 17); see also Colombe, 747 F.3d at 1024. Exhaustion of tribal remedies may be excused as futile in rare cases, such as where there is no functioning court. Krempel v. Prairie Island Indian Cmty., 125 F.3d 621, 622 (8th Cir. 1997) (explaining that exhaustion is not required where there is no functioning tribal court); Johnson v. Gila River Indian Cmty., 174 F.3d 1032, 1036 (9th Cir. 1999) (questioning whether there was a functioning tribal appellate court when there was no response to the initial appellate proceedings in two years); see also Carter v. Buesgen, 10 F.4th 715, 716, 723 (7th Cir. 2021) (holding that four years of inaction by state court of appeals excused exhaustion requirement for a habeas petitioner).

As Respondents highlight, the CRST's Tribal Constitution establishes tribal courts, consisting of a trial court and an appellate court, "for the adjudication of claims or disputes arising among or affecting the Cheyenne River Sioux Tribe," CRST Const. art. IV, § 1(k), and the CRST By-Laws provide that, "[t]he tribal courts shall have jurisdiction over claims and disputes arising on the reservation," CRST By-Laws, Art. V § 1(c). See Doc. 14 at 2 (citing CRST Const. Art. I). Rousseau's tribal court criminal charges are pending pretrial. He has not yet gone to trial, let alone completed the appellate process, on the charges at issue in this case. Accordingly, Judge Moreno found that Rousseau had not fully exhausted his tribal court remedies and that the case should be stayed to allow the CRST courts a full opportunity to rule on Rousseau's claims. Doc. 18 at 9–10 (citing Gillette v. Marcellais, No. A4-04-123, 2004 WL 2677268, at *3 (D.N.D. Nov. 22, 2004)

7

(collecting cases and observing federal courts are generally reluctant to entertain pretrial habeas corpus petitions and require a showing that "special circumstances" exist to warrant intervention before trial)).

Rousseau now objects and argues that exhaustion should be excused. Doc. 19 at 2. He claims the report and recommendation misapplied the exhaustion doctrine and ignored evidence in the record showing the CRST tribal court has "refused to docket filings, refused to rule on motions, concealed orders, denied appellate access, and engaged in timing manipulation designed to evade federal review." Id. at 3. Rousseau further claims that the tribal proceedings are not reasonably timely, the circumstances in this case "meet and exceed the threshold for futility," a stay will "trap Petitioner in a nonfunctioning tribal system indefinitely," and the tribe has failed to meet motion deadlines. See id. at 3–9. Additionally, throughout his objections, Rousseau disputes the way the report and recommendation characterizes his previous tribal criminal case—Judge Moreno cites to the appeal in that case as evidence of a functioning tribal court system whereas Rousseau relies on it to demonstrate the futility of exhaustion. See id.

Rousseau's objections to the report and recommendation are overruled. Rousseau is correct that federal courts may excuse exhaustion when appellate review is extremely delayed, or the tribe lacks a functioning court system. See Krempel, 125 F.3d at 622; Johnson, 174 F.3d at 1036; Carter, 10 F.4th at 716, 723. As reviewed in this Court's earlier Opinion and Order, Doc. 9, that is not the situation here. The CRST Court of Appeals issued an opinion on December 30, 2025, in Rousseau's separate tribal criminal case, and reduced Rousseau's conviction for elder abuse constituting an assault to one for simple assault. See Doc. 46-1 in No. 25-cv-3005. Though the CRST Court of Appeals took far longer than Rousseau wanted, and did not rule fully in favor of Rousseau, the CRST has a functioning appellate court. Not only has Rousseau not had the

8

opportunity to appeal his pending tribal criminal charges, Rousseau has not yet even gone to trial. His pretrial hearing is set for August 10, 2026. Nothing in the record shows that Rousseau has exhausted tribal court remedies, or that Judge Moreno erred by concluding the case should be stayed to allow for exhaustion. See Docs. 20, 21, 22. Rousseau's additional objections are untimely being filed after the fourteen-day window for objections. However, even if this Court were to consider all the arguments presented in the roughly 150 pages of additional filings, Rousseau has not established that exhaustion of his tribal court remedies is futile. See Docs. 20, 21, 22.

### B. Detention

Section 1303 makes habeas corpus relief available for a person to "test the legality of his detention by order of an Indian tribe." 25 U.S.C. § 1303. A person must be detained for federal courts to have jurisdiction under § 1303. Walton v. Tesuque Pueblo, 443 F.3d 1274, 1279 (10th Cir. 2006). "[A] person released on his own recognizance pending sentencing after a state court conviction is 'in custody' for habeas jurisdictional purposes, as is one free on his own recognizance while awaiting a trial de novo in state court." Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 894 (2d Cir. 1996) (first citing Hensley v. Municipal Court, 411 U.S. 345, 351 (1973) (finding custody requirement met where the terms of personal recognizance required petitioner to appear at times and places as ordered by any court or magistrate; petitioner could not "come and go as he please[d]" and was subject to restraints "not shared by the public generally"); then citing Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 301 (1984) (concluding that petitioner's obligation to appear in court and requirement that petitioner not depart the state without the court's leave demonstrated the existence of restraints on the petitioner's personal liberty "not shared by the general public")).

Judge Moreno's report and recommendation concluded that although Rousseau was no longer physically confined after being released on bond, because the "bond includes a court appearance mandate and the risk of arrest and forfeiture for non-compliance," Rousseau is detained under § 1303 given the restraint on his liberty not shared by the public generally. Doc. 18 at 6–7; see also Doc. 20-1 at 5 (listing current pretrial release conditions). Rousseau does not object to Judge Moreno's finding on detention. Doc. 19 at 4 ("The R&R correctly finds that Petitioner is 'detained' under 25 U.S.C. § 1303 because his bond conditions impose restraints not shared by the public."). Because exhaustion has not been met, this Court need not reach the question of whether Rousseau is in "detention" under § 1303. See Chegup, 28 F.4th at 1061–62.

Given the posture of the underlying tribal criminal case, it is appropriate to stay the case until Rousseau has exhausted his tribal remedies. However, Rousseau has requested that his petition be dismissed without prejudice rather than stayed if this Court concluded his tribal court remedies had not been exhausted. See Doc. 17 at 3. This Court can dismiss a § 1303 petition for failure to exhaust. See Azure v. Turtle Mountain Tribal Ct., No. 4:08-CV-095, 2009 WL 113597, at *2–3 (D.N.D. Jan. 15, 2009) (citing in part Necklace v. Tribal Ct. of Three Affiliated Tribes of Fort Berthold Rsrv., 554 F.2d 845, 846 (8th Cir. 1977)) (adopted by Chief Judge Daniel L. Hovland); Colombe, 747 F.3d at 1025; WPX Energy Williston, 72 F.4th at 839. To accommodate Rousseau's request, this Court will dismiss Rousseau's petition without prejudice to refiling following his exhaustion of tribal court remedies.

**III.    Conclusion**

For the reasons stated above, it is

ORDERED that Judge Moreno's Report and Recommendation, Doc. 18, is adopted to the extent detailed above, that the Respondents' Motion to Dismiss, Doc. 13, is granted, and that

10

Rousseau's petition is dismissed without prejudice to refiling following the exhaustion of his tribal remedies.  It is finally

ORDERED that Rousseau's objections to the Report and Recommendation, Docs. 19, 20, 21, and 22, are overruled.

DATED this 27th day of May, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE
